QUINN AMERSON,        )
                                  )
      Petitioner,       )
                                  )
     vs.             )      Case No. 4:12-CV-0564 CDP
                                  )
TERRY RUSSELL,       )
                                  )
      Respondent.   )

## MEMORANDUM AND ORDER

*Pro se* petitioner Quinn Amerson is currently incarcerated at the Eastern
Reception, Diagnostic, and Correctional Center in Bonne Terre, Missouri.
Amerson is serving consecutive sentences of life, for second-degree murder, and
10 years, for first-degree assault. As part of a plea bargain, he pled guilty to both
crimes in Missouri state court.

This matter is now before me on Amerson's two petitions for writ of habeas
corpus under 28 U.S.C. § 2254, as well as his motion for appointment of counsel.
Because Amerson adequately addresses the grounds he wishes to raise and they
can be properly resolved on the basis of the state court record, I will deny his
request for counsel. *See Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994).
Further, because the grounds raised by Amerson are either procedurally defaulted
or do not warrant habeas relief, I will deny his petitions.

## I.  **Factual Background**

At petitioner's plea hearing, the prosecutor summarized the facts as follows. Petitioner's cousin Tina Amerson was in a violent and unhappy relationship with Dary McIntyre.  On April 6, 2008, Tina Amerson cut McIntyre with a knife, and petitioner and another cousin, Shannon Amerson, beat and kicked McIntyre until he was unconscious.  Then the two men loaded McIntyre into the back of a truck, which petitioner's cousin Shannon drove to a Mississippi River levee.  Petitioner accompanied his cousin, driving McIntyre's car.  When they arrived at the levee, they put McIntyre and his car into the water.  Afterwards, they returned to Tina Amerson's residence, where petitioner washed McIntyre's blood out of the truck.

McIntyre's body was eventually found, and an autopsy revealed multiple knife and stab wounds, as well as blunt force trauma to his head.  The autopsy showed, however, that the cause of McIntyre's death was drowning.

## II.  **Procedural History**

Petitioner was initially charged with five counts in connection with McIntyre's death, including first-degree murder.  On July 1, 2009, during petitioner's plea hearing, the prosecutor entered an amended information in accordance with a plea bargain the two sides had reached.  The amended information charged petitioner with second-degree murder, in violation of Mo.

Rev. Stat. § 565.021,[1] and first-degree assault, in violation of Mo. Rev. Stat. § 565.050.[2]

Petitioner Amerson, through his defense attorney, waived a formal reading of the new charges. As relevant here, the amended information stated that Amerson had committed second-degree murder by "knowingly caus[ing] the death of Dary W. McIntyre by drowning him." (*Id.*, p. 12.) In accordance with the plea agreement, the prosecutor recommended sentencing caps of life and 10 years, respectively, to be served consecutively.

On that same date, Amerson submitted a written petition to enter a guilty plea. He signed the petition, indicating that he had read the charges against him, discussed them with his attorney, and "fully under[stood] every charge made against" him. He wrote that:

> On or about April 6, 2008, I caused serious physical injury to Dary McIntyre by hitting & kicking him, & that on the same date I, together with Shannon Amerson, & Tina Amerson caused the death of Darry McIntyre.

He also signed that he understood his right to a trial and the State's burden of proof, and that his attorney had counseled and advised him "on the nature of each charge" and "all possible defenses" he might have. Finally, he signed that he was

---

[1] In relevant part, the statute states, "1. A person commits the crime of murder in the second degree if he: (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person . . . ."

[2] Amerson has not challenged the adequacy of his guilty plea to first-degree assault.

satisfied with his attorney, wished to plead guilty because he was guilty, and

agreed that:

> I OFFER MY PLEA OF GUILTY FREELY AND VOLUNTARILY
> AND OF MY OWN ACCORD AND WITH FULL UNDERSTANDING
> OF ALL THE MATTERS SET FORTH IN THE (INFORMATION)
> AND IN THIS PETITION.

(*Id.*, p. 17.)

During the plea hearing, the plea court asked Amerson if he had been able

to read and understand the petition to plead guilty and whether he had been

satisfied with his attorney. Amerson answered in the affirmative. The plea court

also asked the prosecutor to state the facts the State would expect to prove at trial.

The prosecutor described the April 6, 2008 incident and, as is relevant here, stated

that an autopsy showed McIntyre had stab wounds and blunt trauma to the head,

but that his actual cause of death was drowning. The court then asked Amerson

whether he agreed with what the prosecutor had said:

> [THE COURT]: Is that essentially what happened in this case?
>
> [DEFENSE ATTORNEY]: Can I answer on his behalf, Judge?
>
> [THE COURT]: Sure.
>
> [DEFENSE ATTORNEY]: It is pretty much. There is some differences
> in the factual, as far as what Mr. Amerson perceived. His perception
> was that the stab wounds would have been the actual cause of death.
> From his perception the body was already dead.
> But Mr. Amerson understands and realizes at trial the experts that
> would be called to testify would say . . . drowning was the actual cause
> of death, and that is why we're here entering this plea of guilty. But Mr.

Amerson's perspective on that date was it was a dead body that he was transporting.

[PROSECUTOR]: But that would not be – Our evidence would be that there at the time before he was put into the river, Dary McIntyre, that he was breathing, and that both these defendants knew it and in some fashion saw he was breathing.

[THE COURT]: Okay. Whether or not, the essential elements of the case, which would be the assault, the beating or the hitting or kicking, do you agree with the Prosecutor's statement that those things happened?

[AMERSON]: Yes.

[THE COURT]: Okay. And did you agree with the Prosecutor's statement that on or about the 6th day of April 2008 you, acting alone or in association with other people, may have caused, knowingly caused the Defendant, Dary W. McIntyre. You disagree that he drowned. But as your lawyer explained, the expert would come in and say that was the cause of death. Do you have any dispute that the expert would come in and say that that is what actually caused his death?

[DEFENSE ATTORNEY]: Do you have a dispute with that?

[AMERSON]: No.

[THE COURT]: Okay. And the facts that the Prosecuting Attorney said where Mr. McIntyre's body was placed into the waters of the Mississippi River, do you have any dispute with that?

[AMERSON]: Yes.

[THE COURT]: You disagree that his body somehow got into the river?

[DEFENSE ATTORNEY]: You or acting in concert with others. The body was found in the river; is that correct?

[AMERSON]: Yes.

[THE COURT]: But you didn't –

[DEFENSE ATTORNEY]: He denies personally putting the body in the water, but he was with the other person when the body –

[THE COURT]: You may have seen somebody else put the body in the river, but you were actually out there with them; is that right?

[AMERSON]: Yes.

[THE COURT]: Okay. I think that is sufficient to make the elements of the alleged Court I and Count II that are described.

Do you remember when I asked you to raise your right hand and promise to tell us the truth? Has everything you told us so far today been the truth?

[AMERSON]: Yes.

[THE COURT]: Nobody has asked you to come in and tell a lie or take the blame for somebody else, have they?

[AMERSON]: No, sir.

[THE COURT]: Your plea on Count I, the class A felony of assault in the first degree, and Count II, the class A felony of murder in the second degree, both occurring on or about April 6, 2008, in Pemiscot County, involving a person by the name of Dary McIntyre, were you guilty or not guilty of those offenses?

[AMERSON]: I don't allegedly kill him.

[THE COURT]: Do what?

[AMERSON]: Not on killing him, not on allegedly killing him. But, like beating him, and, you know, driving his car.

[THE COURT]: So you say, yeah, you were involved in the hitting and kicking, that kind of stuff?

[AMERSON]: Yes.

– 6 –

[THE COURT]: And you were involved in – You or other people that you were with were involved in placing his body in the Mississippi River?

[AMERSON]: Yes.

[THE COURT]: And that he did die.  You believe that that did happen?

[AMERSON]: Yes.

[THE COURT]: Alright.  I guess you have explained to him kind of acting alone or in concert with other people.

[DEFENSE ATTORNEY]: Yes, sir.

[THE COURT]: That he can be held responsible for the actions of other people if he knew what was going on, participating in the events.

[DEFENSE ATTORNEY]: Yes.  And the evidence that may contradict his versions of events, yes.

(*Id.*, pp. 30–34.)  The plea court then accepted Amerson's guilty plea, finding that it was made voluntarily with the understanding of the nature of the charges against him, the range of punishment for such charges.

## A.    *Sentencing Hearing*

At his sentencing hearing on November 19, 2009, Amerson stated that he "unintentionally took [McIntyre's] life" and that "Mr. Dary's death was unintentional."  (Resp. Ex. A, L. F. p. 54.)  The prosecutor stated that he took issue with the characterization of the killing as "unintentional."  In response, the sentencing court addressed defense counsel:

THE COURT: Alright. Your client says he didn't intend to commit this act. Does he not want to go to trial? Isn't intent one of the elements the State would have to prove in the conviction of a guy?

[DEFENSE ATTORNEY]: Yes, Judge. And I think that . . . when we talk about intent, there is a type of intent that he would sit around and plan, well, he is going to be coming by here tomorrow. I want to make sure I jump him on that day. . . . .

And there is also the level of intent, that is more applicable to this case. They are at this party. He is under the influence of drugs and alcohol. Judge, his responsibility in the role, he is not shirking the matter at all. He understands that. That is why he has pled guilty. He is accepting responsibility.

But he was at a party. Everyone was under the influence of drugs and alcohol. An[d] altercations happened between this Dary McIntyre and his cousin. There is a long history of violence there. He and his cousin, Shannon, thought they had to intervene in that. There was a fight. As [the prosecutor] said, Shannon and Quinn, Quinn more importantly, involved fists and involved kicking.

And at some point there was involvement with Tina with a knife. Yes, unconscious to the doctor, to the medical physician, Dary McIntyre at the scene of the assault is laying there unconscious to the doctor. To the people standing there, Quinn thought he was dead then.

There was a twenty-minute ride out there. Quinn – And again, Judge, this doesn't justify his actions of taking the body twenty minutes away. He was not planning to throw – He did not spend twenty minutes planning to throw a live person into the water and cause the drowning. That is what Mr. Amerson thinks of as not did not intend to cause the death.

THE COURT: Alright. Any legal cause or reason why sentence and judgment should not now be pronounced?

[DEFENSE ATTORNEY]: No, Judge.

(*Id.*, pp. 57–59.)

The court pronounced consecutive sentences of life for second-degree murder, plus ten years for first-degree assault, as recommended by the prosecutor.

The court acknowledged that this was the same sentence Amerson's cousin Shannon had received after being convicted by a jury. The court stated that it didn't "see much difference between Shannon's participation and Quinn's participation. They seem to be just about equal." (*Id.*, p. 59.)

## B.  *Motion for Post-Conviction Relief*

On February 2, 2012, Amerson filed a *pro se* motion to vacate, set aside or correct his judgment or sentence under Missouri Supreme Court Rule 24.035. After he was appointed counsel, he amended his motion. In the amended motion, Amerson argued he was entitled to post-conviction relief because the plea court had accepted his guilty plea to the second-degree murder charge without a factual basis. (*See generally id.*, pp. 73–82.) Therefore, he contended, the plea court had failed to comply with Missouri Supreme Court Rule 24.02(e)[3] and as such, had violated his state and federally protected rights to due process and equal protection. Through his appointed counsel, Amerson wrote, "The Court never ascertained that Movant **knowingly** cause the death of Dary W. McIntyre. In fact, the Court and the parties forged ahead in the face of Movant's abject denial of intending to kill McIntyre." (*Id.*, p. 78.) (emphasis in original).

---

[3] Rule 24.02(e) states, "The court shall not enter a judgment upon a plea of guilty unless it determines there is a factual basis for the plea."

On December 29, 2010, the motion court denied Amerson's Rule 24.035

motion without a hearing.  The motion court held that:

> The facts recited at the plea hearing provided a valid basis to conclude
> defendant was criminally responsible for murder in the second degree
> as charged in Count 2 of the amended information.  Defendant admitted
> that he personally took part in hitting, kicking, and beating McIntyre.
> He further admitted that he drove the victim's car out to the levee,
> accompanying his cousin who was driving their SUV with the victim in
> the back.  It can be inferred that the purpose of taking two separate
> vehicles was that Quinn Amerson intended to dispose of the victim's car
> and would need to ride back with his cousin Shannon in the SUV.  From
> Movant's admitted participation in both the assault and the subsequent
> attempt to conceal the assault by disposing of both the victim and his car
> in a location where they would not be found for some time, the plea
> court could quite easily conclude that the facts showed more than "mere
> presence" and adequately demonstrated Movant's criminal responsibility
> for the act of dumping the victim into the river.
>
> Movant understood the nature of the charges as filed in the amended
> information.  At the plea hearing, the state explained what they expected
> the evidence to be were the case to go to trial, and Movant and his
> defense counsel took an active part in that discussion.  Discussion was
> held on the record about criminal responsibility for the conduct of
> others, and defense counsel affirmed that he had previously discussed
> that legal theory with his client.
>
> The plea hearing was not constitutionally defective, and therefore the
> Movant is not entitled to relief under Rule 24.035.

(*Id.*, pp. 87–88.) (paragraph numbers omitted).

On appeal, the Missouri Court of Appeals for the Southern District affirmed

per curiam, holding that the motion court had not clearly erred in denying

Amerson's Rule 24.035 motion for post-conviction relief.  In a memorandum

opinion, the Court of Appeals wrote that:

Movant's burden . . . is to prove *both* (1) non-compliance with Rule 24.02(e) *and* (2) that such failure deprived him or her of the actual knowledge of the factual basis for the charge, thereby rendering his or her plea unknowing and involuntary and, thus, unconstitutional. . . .

The plea record demonstrates *neither* an insufficient factual basis for the plea *nor* that Movant lacked actual knowledge of the factual basis for the charge.

(Resp. Ex. D., *Amerson v. State*, No. SD31126 (Mo. Ct. App. Oct. 17, 2011), at *3 (internal quotation marks and citation omitted) (italics in original)).  The appellate court noted that at the plea hearing, Amerson "admitted substantial participation in the crimes and virtually all facts alleged by the state." *Id.*  Further, the court reasoned, Amerson had admitted in his plea petition that "he had been advised of the nature of the charges" and "he was pleading guilty because he was guilty." *Id.*

## III.  <u>Grounds Raised</u>

Amerson now seeks federal habeas corpus relief.  *See* 28 U.S.C. § 2254.  In a petition filed March 26, 2012, he asserted one ground:

(1) The plea court clearly erred by accepting his guilty plea without an adequate factual basis, thereby violating Amerson's federal Constitutional rights.

In a later-filed document that Amerson styled as "Petitioner's First Amended Writ for Petition of Habeas Corpus," he asserted an additional ground for relief:

(2) The trial court was without jurisdiction to convict and sentence him because the amended information to which he pled guilty did not reflect an

– 11 –

accomplice liability theory and constituted a "variance" from the facts pled by the State during his sentencing hearing.

## IV. Motion for Appointment of Counsel

Amerson has also requested court-appointed counsel. There is no constitutional right to counsel in habeas corpus proceedings. *See Blair v. Armontrout*, 916 F.2d 1310, 1332 (8th Cir. 1990), *cert. denied*, 502 U.S. 825 (1991). Under 18 U.S.C. § 3006A(a)(2), a court may nonetheless appoint counsel for a habeas petitioner if it "determines that the interests of justice so require." Except when an evidentiary hearing is held, a district court may use its discretion in deciding whether to appoint counsel. *See Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir. 1994). To determine whether appointment of counsel is warranted, the district court should examine the nature of the litigation, the litigant's ability to do research and present his claims, and the complexity of the issues. *See id.*; *Hoggard*, 29 F.3d at 471.

I believe Amerson has adequately presented the issues he wishes to raise. His pleadings are comprehensible and include ample references to both the state court record and the law upon which Amerson relies. *See Glass v. Higgins*, 959 F.2d 88, 90 (8th Cir. 1992). He has clearly delineated his alleged grounds for relief, and neither of his two claims appears legally or factually complex. I do not

believe that either the interests of justice or due process requires the appointment of counsel, so I will deny the motion.

## V.    Petitions for Habeas Relief

A state prisoner must exhaust his state-court remedies before turning to the federal courts for habeas relief.  *See* 28 U.S.C. § 2254.  This requirement gives the State the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights" by alerting the state courts to the federal nature of the prisoner's claims.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation marks omitted).

To fulfill the exhaustion requirement, a state prisoner must have "fairly presented" his claim in the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  "Fairly presented" means that the state prisoner must "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue."  *Abdullah v. Groose*, 75 F.3d 408, 411–12 (8th Cir. 1996) (en banc).  The prisoner must fairly present "not only the facts, but also the substance of his federal habeas corpus claim."  *Id.* at 411.  If the state-law claim presented by the prisoner in state court was "merely similar to the federal habeas claim," the prisoner has not satisfied the "fairly presented" requirement.  *Id.* at 412.

## A.    *Ground Raised in Amended Petition is Procedurally Defaulted*

I will consider the ground Amerson raised in his amended petition first. Amerson did not raise this ground for relief – that the amended information varied too substantially from the facts pled at his plea hearing – on his appeal from the denial of post-conviction relief. Because Amerson did not appeal this claim, he did not give the Missouri Court of Appeals the opportunity to consider this claim and correct it if it were wrong. The time to do so has expired. *See Wilson v. State*, 177 S.W.3d 852, 853 (Mo. Ct. App. 2005) (citing Mo. Sup. Ct. R. 75.01). Therefore, he has procedurally defaulted on this claim. *Lowe-Bey v. Groose*, 28 F.3d 816, 818 (8th Cir. 1994) (to avoid default, claim presented to trial court must be renewed at appellate court level). *See also Sweet v. Devo*, 125 F.3d 1144, 1150 (8th Cir. 1997) (claim not raised on post-conviction appeal deemed abandoned).

In order to overcome procedural default, Amerson would have to demonstrate cause for the default and prejudice from an alleged violation of the Constitution, or he would have to show that failure to consider the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply" with the state's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Amerson argues that he has been "greatly prejudiced" in that he was convicted and sentenced by a court without jurisdiction. He finds fault with the

amended information, which contained no facts suggesting that Amerson had acted with others in causing McIntyre's death.  Amerson argues that this information was defective because it did not put him on notice that he would have to defend against the accomplice liability theory the State presented at his plea hearing.  Regardless, Amerson does not point to any evidence within or outside of the record to show – or even attempt to explain[4] – why I should excuse procedural default on the claim he raises in his second ground for relief.  He therefore has not met the "cause" prong of the *Coleman* test, and he cannot overcome procedural default that way.

To rely upon the fundamental-miscarriage-of-justice exception to procedural default, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted."  *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006).  A review of the record shows that Amerson has not provided any new evidence – much less exculpatory evidence – that would entitle him to relief from default under this exception.

---

[4]  In his amended petition, Amerson cites *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).  Construing that petition extremely liberally, *see Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996), it is possible Amerson intended to state obliquely that the "cause" of his procedural default was the ineffectiveness of his post-conviction counsel.  Regardless, *Martinez* provides no help, as it only recognizes such cause when the underlying constitutional claim is ineffective assistance at trial.  *Id.  See also Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("*Martinez* offers no support . . . for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause.").

Because it has been procedurally defaulted, I will deny habeas relief on the ground Amerson raised in his amended petition. *See also Weiland v. Parratt*, 530 F.2d 1284, 1289 (8th Cir. 1976) (habeas petitioner's constitutional right to know the nature of charges he faced did not include right to know he was charged as an accomplice).

**B.**   ***Ground Raised in Original Petition Is Without Merit***

In his original habeas petition, Amerson raises an additional ground for relief. That ground has both state-law and federal-law components. Amerson first claims the state courts violated Missouri Supreme Court Rule 24.02(e), in that there was no adequate factual basis for his guilty plea to the second-degree murder charge. That claim is not cognizable. It constitutes an allegation of state-law error, which is not a basis for habeas relief. *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010). *See also Cranford v. Lockhart*, 975 F.2d 1347, 1349 (8th Cir. 1992) (state court's failure to comply with state rule requiring factual basis for guilty plea does not deprive defendant of due process, and thus does not warrant habeas relief); *Price v. State*, 137 S.W.3d 538, 541 (Mo. Ct. App. 2004) (Rule 24.02(e) is not "constitutionally based").

Amerson also appears to allege that – as a result of the insufficient factual basis  – his plea could not have been knowing and voluntary. Assuming without

deciding that Amerson has exhausted his state remedies as to the federal nature of this claim, it still does not support his request for habeas relief.

Under 28 U.S.C. § 2254(d), a federal court may grant habeas relief on a claim decided on the merits in state court only if that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). "A state court decision is contrary to clearly established federal law only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently that the Supreme Court has on a set of materially indistinguishable facts." *Restucci v. Spencer*, 249 F. Supp. 2d 33, 42 (8th Cir. 2003) (internal quotation marks and brackets omitted).

It is clearly established federal law that a guilty plea must be knowing, voluntary, and intelligent. *See Brady v. United States*, 397 U.S. 742, 747–48 nn.4–6 (1970) (collecting cases); *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1036 (8th Cir. 2010) (citing *Bousley v. United States*, 523 U.S. 614, 618 (1998)). Constitutionally, a guilty plea is not voluntary if induced by threats, misrepresentation, or improper promises. *Bousley*, 523 U.S. at 619. A guilty plea

cannot be intelligent unless the defendant first receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In order for a plea to be found invalid on this basis, the defendant must have had "such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Ivy v. Caspari*, 173 F.3d 1136, 1142 (8th Cir. 1999) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

Amerson does not allege that his plea was involuntary in the sense that it was induced by threats or improper promises. Rather, he claims that he has never admitted to knowingly killing McIntyre as required for a conviction for second-degree murder under Missouri law. He argues that this allowed him to be "convicted and then sentenced for an offense [whose] nature he did not understand." (Pet., Supp. Attach., p. 4.) At best, Amerson is conflating the constitutional requirement that he be notified of the nature of the charges he faced and his preference that he *agree* with those charges. Due process only requires the former.

In *Henderson*, the United States Supreme Court granted habeas relief to a state prisoner who, like Amerson, argued that he did not understand the nature of the second-degree murder charge he faced. In that case, the prisoner had never

been informed that intent to cause death was an element of the offense. The Court distinguished that situation from cases where "the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused." 426 U.S. at 647. *See also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (characterizing the *Henderson* decision).

Here, the record contains an explicit statement that intent (namely, that Amerson "knowingly" killed McIntyre) was an element of the second-degree murder charge.[5] The amended information to which Amerson pled guilty accurately reflected that element. Amerson, through counsel, waived a formal reading of the amended information. The plea court verified multiple times that Amerson wished to plead guilty despite Amerson's contention that the prosecutor's facts about how McIntyre died were wrong. Amerson himself indicated in his written plea petition that he wished to plead guilty because he was guilty, and he averred that counsel had explained the nature of the charges against him. In addition, defense counsel represented that he had informed Amerson

---

[5] At sentencing, the court stated, "Your client says he didn't intend to commit this act. Does he not want to go to trial? Isn't intent one of the elements the State would have to prove in the conviction of a guy?" Defense counsel responded, "Yes, Judge." (Resp. Ex. A, L. F. pp. 57–58.) In light of that exchange, it would strain common sense to contend that defense counsel had not informed Amerson of intent element. *See Henderson*, 426 U.S. at 647 (even where there is no such representation on the record, "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice").

about accomplice liability under Missouri law. *See* Mo. Rev. Stat. § 562.041 (responsibility for conduct of another). The record, taken in its entirety, refutes Amerson's contention that he did not understand the nature of the charges to which he pled guilty. *See Boykin v. Alabama*, 395 U.S. 238, 244 (1969) (record must affirmatively disclose that guilty plea was knowing and voluntary).

**C.** **Alford *Plea***

It is worth noting that a defendant need not admit to each element of a crime in order to enter a knowing, intelligent, and voluntary guilty plea. *See North Carolina v. Alford*, 400 U.S. 25 (1970). In *Alford*, the Supreme Court held that a court may constitutionally accept the guilty plea of a defendant who has not expressly admitted guilt, as long as his guilty plea represents "a voluntary and intelligent choice among alternative courses of action open to defendant." *Id.* at 31. However, if a defendant pleads guilty while protesting innocence, a factual basis for the guilty plea is constitutionally required. *See, e.g.*, *White v. United States*, 858 F.2d 416, 417 n.2 (8th Cir. 1988).

Even if Amerson had intended to enter an *Alford* plea, the record indicates there was a constitutionally sufficient factual basis for the court to determine that his plea was knowing and voluntary. The plea court inquired at length into the strength of the State's evidence, including the expected expert testimony that drowning was McIntyre's cause of death. After explaining on the record

Amerson's version of the facts, defense counsel acknowledged he had discussed that evidence with his client, and he stated affirmatively that Amerson wanted to plead guilty. (*Id.*, p. 34.) When the sentencing court effectively offered Amerson the chance to withdraw his plea (by stating at the sentencing hearing, "Does he not want to go to trial?"), defense counsel – without objection by Amerson – told the court to proceed with sentencing. (*Id.*, p. 59.) Amerson repeatedly stated that he was satisfied with his counsel. (Resp. Ex. A, L. F. pp. 26, 60–62.) All of this demonstrates that Amerson intelligently pled guilty to second-degree murder, regardless of whether he admitted to each element of that offense. *See Bradshaw*, 545 U.S. at 184 (under Ohio law, defendant's "steadfast assertion" that he did not shoot victim was not inconsistent with an admission to specific intent to cause death).

Regardless of the nature of Amerson's plea, there is enough to satisfy the due process requirement that Amerson receive "real notice of the true nature of the charge against him." *Bousley*, 523 U.S. at 618. It is true that colloquy between Amerson and the motion court at his plea hearing was not ideal.[6] Nonetheless, the record – including the admissions by Amerson in his written plea petition and the

_____

[6] For example, Amerson never voiced that he was guilty in response to an inquiry by the plea court. In response to the plea court's question ". . . were you guilty or not guilty of those offenses?," Amerson stated, "I don't allegedly kill him." (Resp. Ex. A., L. F. p. 33.) *But see also Thundershield v. Solem*, 565 F.2d 1018, 1021–25 (8th Cir. 1977) (denying habeas relief to petitioner whose guilty pleas were accepted after similar colloquy).

representations of defense counsel at the plea and sentencing hearings –
inescapably supports the fact that Amerson's guilty pleas were knowing,
intelligent, and voluntary.

I cannot find that the state court adjudication ran contrary to any clearly
established federal law.  Therefore, habeas relief is not warranted on either of the
grounds Amerson has presented.

## IV.    <u>Certificate of Appealability</u>

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals
from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit justice or
judge issues a Certificate of Appealability.  28 U.S.C. § 2253(c)(1)(A).  To grant
such a certificate, the justice or judge must find a substantial showing of the denial
of a federal constitutional right.  *Id.* § 2253(c)(2).  *See also Tiedeman v. Benson*,
122 F.3d 518, 522 (8th Cir. 1997).  A substantial showing is a showing that issues
are debatable among reasonable jurists, a court could resolve the issues differently,
or the issues deserve further proceedings.  *Cox v. Norris*, 133 F.3d 565, 569 (8th
Cir. 1997).  I find that reasonable jurists could not differ on either of Amerson's
claims, so I will deny a Certificate of Appealability on both claims.

Accordingly,

**IT IS HEREBY ORDERED** that Quinn Amerson's Petition [#1] and Amended Petition [#11] for Writ of Habeas Corpus under 28 U.S.C. § 2254 are **DENIED**.

**IT IS FURTHER ORDERED** that Amerson's Motion to Appoint Counsel [#4] is **DENIED**.

**IT IS FINALLY ORDERED** that this Court will not issue a certificate of appealability, as petitioner has not made a substantial showing of the denial of a federal constitutional right.

A separate judgment in accordance with this memorandum and order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of February, 2013.